[Cite as *State v. Welch*, 2011-Ohio-3243.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95577

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LEE WELCH

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART AND REMANDED IN PART

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-529812

BEFORE:     Sweeney, P.J., Keough, J., and E. Gallagher, J.

RELEASED AND JOURNALIZED:     June 30, 2011

ATTORNEY FOR APPELLANT

Kimberly K. Yoder, Esq.
Kimberly K. Yoder Co., L.P.A.
1236 Smith Court
Rocky River, Ohio 44116

ATTORNEYS FOR APPELLEE

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Brent C. Kirvel, Esq.
Asst. County Prosecutor
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶ 1} Defendant-appellant Lee Welch ("defendant") appeals his convictions for multiple sexual offenses and his 36-year prison sentence. After reviewing the facts of the case and pertinent law, we affirm in part and remand for resentencing in part.

{¶ 2} On August 4, 2009, K.W. reported to the Cleveland Police that defendant, who is K.W.'s father, sexually abused her from September of 2007 to July of 2009, when K.W. was 14 – 15 years old. Also, on August 4, 2009, defendant initiated a complaint that K.W. was

an unruly child pursuant to R.C. 2151.022(A) and (C). This complaint was filed in juvenile court on August 5, 2009.

{¶ 3} On October 16, 2009, defendant was charged in a 67-count indictment relating to alleged sexual abuse of K.W. The case was tried to the court, and on June 28, 2010, defendant was convicted of 12 counts of rape, 12 counts of kidnapping, 13 counts of sexual battery, and one count each of gross sexual imposition, importuning, and disseminating matter harmful to juveniles.

{¶ 4} On July 19, 2010, the court sentenced defendant to 36 years in prison, as follows: the rape and kidnapping convictions merged and defendant was sentenced to three years in prison for each of these 12 counts, to run consecutive to one another, totaling 36 years; two years in prison for each count of sexual battery; and one year in prison for each remaining count, all to run concurrently.

{¶ 5} Defendant appeals and raises four assignments of error for our review, the first of which states as follows:

{¶ 6} "I. Defendant's conviction was against the manifest weight of the evidence."

{¶ 7} Specifically, defendant denies having sexual contact with K.W., arguing that she fabricated the allegations against him after learning that he intended to file unruly charges against her for disciplinary problems. In the alternative, defendant argues that there was no evidence of force or threat of force to support the rape convictions, there was no evidence of

removal or restraint of liberty to support the kidnapping convictions, and there was no evidence of soliciting to engage in sexual conduct to support the importuning conviction.

{¶ 8} Defendant's alternate arguments are based on the sufficiency of the evidence, rather than the weight of the evidence. When reviewing sufficiency of the evidence, an appellate court must determine, "after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 9} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 10} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 11} In the instant case, defendant was convicted of the following offenses:

{¶ 12} Rape in violation of R.C. 2907.02(A)(2), which states that "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 13} Kidnapping in violation of R.C. 2905.01(A)(4), which states that "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * *   [t]o engage in sexual activity * * * with the victim against the victim's will * * *."

{¶ 14} Sexual battery in violation of R.C. 2907.03(A)(5), which states that "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent * * *."

{¶ 15} Gross sexual imposition in violation of R.C. 2907.05(A)(1), which states that "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 16} Importuning in violation of R.C. 2907.07(B), which states that "No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age* * *."

{¶ 17} Disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), which states that "No person, with knowledge of its character or content, shall recklessly * * *

exhibit * * * or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles * * *."

{¶ 18} The following evidence was presented at trial:

{¶ 19} Joyce Kern, a social worker for the Cuyahoga County Department of Children and Family Services, testified that defendant had custody of K.W., along with three of K.W.'s younger siblings. All the children had very little involvement with their mothers. Evidence in the record shows that defendant's parents played a large role in raising defendant's children while they were in his custody. C.W., who is defendant's father and K.W.'s grandfather, testified that K.W. had a reputation for being a liar. J.W., who is defendant's mother and K.W.'s grandmother, testified that K.W. "has always been a child incorrigible," and that K.W. lied about defendant sexually abusing her.

{¶ 20} Sonja Gorham testified that in 2007, she and her five children moved in with defendant and his four children. K.W. was 14 years old at the time. Defendant and his children moved out about one year later, although Gorham remained in contact with K.W. Defendant and his children lived in various houses in the Cleveland area until August of 2009, when the children were placed in foster care after K.W.'s allegations against defendant. According to Gorham, K.W. made up the allegations about her father. Gorham filed unruly charges against K.W. on August 27, 2009.

{¶ 21} According to the record, in June of 2009, defendant put K.W. "out on the streets," and K.W. spent most of that summer living in Shantonya Pries's house. Pries testified that K.W. sold Pries's "godsister" a puppy that belonged to defendant without defendant's permission. A couple of days later, defendant questioned Pries about this, and defendant said he was "going to go down and file unruly charges against K.W. for stealing the puppy."

{¶ 22} K.T. testified that in the summer of 2009, she lived with K.W. in Pries's house. According to K.T., K.W. sold one of defendant's dogs to K.T.'s aunt for $200. When K.W. found out that defendant was upset with her for selling the dog without his permission, K.W. stated that "if he wants to get mad over a stupid dog, I got something for him."

{¶ 23} M.H. testified that he lived in the same house as K.T. and K.W. in the summer of 2009. According to M.H., K.W. was living at that house, and not with defendant, "[b]ecause she didn't listen. She did what she wanted to do." M.H. spoke with K.W. about defendant possibly filing an unruly charge against K.W. for stealing defendant's dog. In response, K.W. said, "If my daddy go down there and lie on me, I'm going to lie on him."

{¶ 24} K.W. testified that she was 14 years old the first time defendant had sex with her in September of 2007. K.W.'s brother walked into K.W.'s bedroom just as K.W. was about to have sex with a boy. K.W.'s brother told defendant, who then told K.W. to wash herself. K.W. testified about what happened next with defendant:

{¶ 25} "And after I got out of the tub, I went in my room and I was trying to get dressed and then he came in the room and I tried to cover up my chest and that's when he started talking to me and asking me why was I down there doing that with the boy when there were other people in the house. And then he started like talking to me and everything and started feeling on me." K.W. testified that defendant touched her breast, then pulled his pants down. Defendant told K.W. to lay down on the bed. Defendant had vaginal intercourse with K.W., without a condom, and ejaculated on her stomach. Defendant gave K.W. condoms and warned K.W. that nobody would believe her if she told anyone.

{¶ 26} K.W. testified that a second incident occurred in her room around Halloween of 2007, when defendant "hurried up and inserted his penis in." K.W. testified about several additional times when defendant had sex with her through July 4, 2009, at different houses. K.W. included details such as whether it was day or night, what room each incident occurred in, and whether defendant wore a condom. K.W. alleged that defendant would tell her to lay down on a bed or couch and undress. In each instance, defendant would have vaginal intercourse with her. Many times, defendant would lock the door.

{¶ 27} K.W. recalled that defendant took K.W. to the car repair shop where defendant worked one night in the fall of 2008. Defendant put a blanket on the floor. K.W. told defendant that she was menstruating, and they left. Defendant took K.W. back to the shop about one week later and put the same blanket on the floor. He told K.W. to lay down and

take her jeans off. He had vaginal intercourse with her, pulled his penis out, and ejaculated on the blanket.

{¶ 28} K.W. testified about another incident when defendant got into the shower with her. K.W. saw a tattoo on the upper part of defendant's right thigh. Defendant told K.W. to put her hands on the shower wall, and he inserted his penis into her vagina from behind. K.W. recalled another time when defendant showed K.W. a pornographic movie in the basement before having vaginal sex with her.

{¶ 29} K.W. testified that she was scared of defendant and she felt that she did not have a choice whether to submit to the sexual activity with him. Defendant had filed an unruly charge against K.W. in 2006, when K.W. was 13 years old, because she repeatedly stayed out past her curfew. In June of 2009, defendant told K.W. that she could no longer live in his house, "[b]ecause he said that I was always gone and I guess it was starting to [be] a problem by me not being home every day."

{¶ 30} K.W. testified that she reported defendant's sexual abuse to the police on August 3, 2009 and was not aware that defendant filed unruly charges against her again until she went into foster care on August 7, 2009. K.W. denied that it was "common knowledge" that, during the summer of 2009, if she did not "shape up" unruly charges would be filed against her. She denied selling one of defendant's puppies and denied telling others that if defendant filed unruly charges against her she would lie about him.

{¶ 31} K.W. testified that she told her mother about defendant's conduct on August 3, 2009, not long after K.W.'s mother re-entered K.W.'s life. The next morning, August 4, 2009, K.W. and her mother went to the police. Asked why she chose that date to tell her mother, K.W. replied, "Because I knew it was the right time to tell her. * * * I just knew it."

{¶ 32} Lauren McAliley, the pediatric nurse practitioner who examined K.W. on August 6, 2009, testified that K.W. indicated that she had been raped repeatedly since the age of 14. K.W.'s physical exam suggested "blunt force or penetrating trauma," which could be explained by sexual activity. K.W. admitted to being sexually active with partners other than her father.

{¶ 33} Lauren Krol, who works for CCDCFS, interviewed K.W. about the allegations against defendant. Krol's written report notes that defendant sexually abused K.W. "over 30 times," and on four occasions, defendant ejaculated inside of K.W. Krol could not remember if K.W. specifically told her about the ejaculation or if Krol assumed this after K.W. told Krol defendant had sexual intercourse with her without a condom. Krol testified that, in her line of work, "[t]he fact that sex occurred and the children may be at risk is more important" than the details of the sexual conduct. Krol interviewed defendant, who stated that K.W. "made this up" because K.W. was caught stealing one of his puppies.

{¶ 34} Cleveland Police Detective Karl Lessmann spoke with defendant about K.W.'s allegations on August 9, 2009. According to Det. Lessmann, defendant denied having sexual

relations with K.W.   Defendant confirmed that he caught K.W. having sex with boys, allegedly on three separate occasions.   Defendant said that K.W. "told others that if he went to Juvenile Court and filed charges on [K.W.] for being unruly and stealing a dog, she was going to go down and file charges on him."

{¶ 35} In looking at defendant's arguments regarding the sufficiency of the evidence, we first focus on the element of force or threat of force in relation to the rape charges. In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304, the Ohio Supreme Court recognized "the coercion inherent in parental authority when a father sexually abuses his child."   The Court held that "'[w]ith the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength. * * * Force need not be overt and physically brutal, but can be subtle and psychological.   As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" Id.   (Internal citations omitted.)

{¶ 36} Defendant also argues there was insufficient evidence to show that defendant restrained K.W.'s liberty in relation to the kidnapping convictions.   In *State v. Logan* (1979), 60 Ohio St.2d 126, 130, 397 N.E.2d 1345, the Ohio Supreme Court held the following: "It is clear from the plain language of the statute that no movement is required to constitute the

offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient. Thus, implicit within every forcible rape is a kidnapping."

{¶ 37} In the instant case, K.W. testified that she feared defendant and felt she did not have a choice but to submit to his sexual abuse. She also testified that, at times, he locked the door to the room in which the sexual conduct occurred. Given that K.W. was 14 and 15 years old at the time, and defendant is her father, we find the evidence sufficient to support the elements of rape and kidnapping.

{¶ 38} Defendant next argues that there was no evidence to support his importuning conviction, which is based on K.W.'s testimony that defendant took her to his workplace, but they left without sexual activity occurring because K.W. was menstruating. Importuning involves soliciting a minor for sex. R.C. 2907.07. K.W. testified that when defendant put a blanket on the floor of the auto repair shop, she understood that he wanted sex. Furthermore, when K.W. told defendant she was menstruating, defendant put the blanket away, and they left. We find this evidence sufficient to show defendant solicited K.W. to engage in sexual conduct.

{¶ 39} Turning to the manifest weight of the evidence, defendant argues that K.W. had a reputation for lying, as well as a reason to lie about defendant, and there were several inconsistencies in her testimony. However, as the Ohio Supreme Court has noted, "where the decision in a case turns upon credibility of testimony, and where there exists competent and

credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742.

{¶ 40} Despite minor inconsistencies in K.W.'s testimony — for example, about whether K.W. impermissibly sold one of defendant's puppies or whether defendant ejaculated inside of K.W. — we find that defendant's convictions are not against the manifest weight of the evidence. The fact-finder is free to believe all, part, or none of each witnesses' testimony. See *State v. Martin*, Cuyahoga App. No. 90722, 2008-Ohio-5263.

{¶ 41} In finding defendant guilty of multiple sex offenses against K.W., the court stated the following:

{¶ 42} "This Court felt that [K.W.'s] demeanor was consistent with prior trauma. This witness did not, in the Court's judgment, display any of the hallmarks of making a story up. She provided a lot of detail and a lot of the detail was incidental detail, not detail that you might expect to be supplied by someone who was making it up.

{¶ 43} "No part of her testimony impressed the Court as, quote, piling it on. In other words, she was candid in her, for example, describing an incident where sex was being requested of her but then the perpetrator drew back because she was having her period or whatever."

{¶ 44} "Our victim had failures of memory. And, that's not particularly unusual for human beings. For example, she did not know, on certain occasions, whether or not Mr. Welch ejaculated. Sometimes she knew what color pajamas she was wearing, sometimes she did not. * * * So her failures of memory, the difference in the locales and the approaches that she describes, that her perpetrator, victimizer took, amplified, to the Court, a certain amount of credibility."

{¶ 45} The court concluded that nothing about K.W. being in trouble in the past deprived her of "significant credibility."

{¶ 46} The court found that K.T. and M.H., who testified on behalf of defendant, displayed "overeagerness" and an "attempt by the Defendant and his girlfriend to procure testimony." The court concluded that "[a] lot of people characterized [K.W.] as an untruthful person and those people were clearly in the Defendant, Mr. Welch's camp. Would you expect people in his camp with that bias to testify that the victim was, for example, never known to lie or rarely lied[?]"

{¶ 47} As to K.W. fabricating the allegations to "get back" at her father, the court found that "this could just as easily mean [K.W.] was, in effect, threatening to expose her father's past sexual assaults if he exposed her effect of the puppy. In effect, [K.W.] may well have understood that she could do a lot her father didn't like because she had something to report on him.

{¶ 48} "So it was, in that sense, perhaps a kind of blackmail that [K.W.] was exposing when she said, if he gives me trouble about the puppy, then I can give him trouble. Obviously, Mr. Welch didn't understand the power had shifted to [K.W.]"

{¶ 49} The court found that the timing of K.W.'s disclosure to her mother coincided with a renewed relationship with her mother. "Now [K.W.] had, perhaps for the first time, someone who might support her." Additionally, the court found that defendant putting a tattoo on the small of K.W.'s back that read "Love" was "a questionable act, not, in the Court's eyes, * * * consistent with an innocent person."

{¶ 50} Accordingly, we find that there was sufficient evidence to convict defendant of multiple sex related offenses and these convictions were not against the manifest weight of the evidence. Defendant's first assignment of error is overruled.

{¶ 51} In defendant's second assignment of error, he argues as follows:

{¶ 52} "II. "The trial court erred in failing to merge defendant's convictions for rape and sexual battery, which are allied offenses and arose from the same conduct."

{¶ 53} In the instant case, defendant was convicted of 12 counts of rape and 12 counts of kidnapping, which the court properly merged for sentencing purposes. Defendant was also convicted of 13 counts of sexual battery in violation of R.C. 2907.03(A)(5), 12 of which were based on the same conduct supporting the rape and kidnapping charges. Defendant argues that these 12 sexual battery convictions should merge for the purpose of sentencing as well.

**{¶ 54}** The Ohio Supreme Court recently established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶48-50 (emphasis in original; internal citations omitted).

**{¶ 55}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶ 56}** "'If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'

**{¶ 57}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."

**{¶ 58}** Defendant was convicted of forcible rape under R.C. 2907.02(A)(2) and sexual battery in violation of R.C. 2907.03(A)(5), which prohibits incest. Defendant's conduct of having sexual intercourse with his teenage daughter could result in the commission of rape and incest under these respective statutes. Twelve of defendant's convictions for both offenses

were based on the same conduct and state of mind, albeit in respect to 12 incidents. Therefore, these offenses are allied and should have been merged for sentencing.

{¶ 59} Defendant's second assignment of error is sustained and this matter is remanded to the trial court for further proceedings concerning allied offenses. Pursuant to *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶24, the State may elect which of the offenses to pursue on resentencing.

{¶ 60} Defendant's third assignment of error states the following:

{¶ 61} "III. The trial court erred in conducting its own independent research and in relying upon matters that were not offered in evidence."

{¶ 62} Defendant argues that the court improperly considered outside influences in convicting him of the offenses at hand, such as a chart and subsequent correspondence to the prosecutor and defense counsel summarizing the 67-count indictment, the 27 counts defendant was acquitted of, the 40 counts defendant was convicted of, and which counts merged for sentencing. Additionally, defendant infers that the court considered outside influences to conclude that K.W.'s mother re-entered her life, because the mother did not testify. Furthermore, defendant argues that the court relied on outside influences regarding the meaning of the tattoo that defendant put on K.W.'s back, because no expert or lay witness testified regarding the significance of tattoos.

**{¶ 63}** Longstanding law requires that the fact finder in a criminal trial be fair and impartial; thus, outside influences are prohibited if they are prejudicial to the outcome of the trial. See *State v. Kehn* (1977), 50 Ohio St.2d 11, 361 N.E.2d 1330. "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado, ex rel. Attorney General* (1907), 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879.

**{¶ 64}** This court applied the "no outside influences" rule in *State v. Spencer* (1997), 118 Ohio App.3d 871, 873, 694 N.E.2d 161, to grant a new trial based on juror misconduct "after it was revealed that one of the jurors had made the statement while in the deliberation room with the other eleven jurors that he or she had contacted twelve doctors over the weekend recess * * * about prescribing methadone" in violation of R.C. 3793.11.

**{¶ 65}** We find the facts of the case at hand to be distinguishable from *Spencer*. There is no evidence that the court was influenced by anything outside of the record in the instant case. The summary chart and letter were prepared by the court post-conviction to facilitate sentencing. Although K.W.'s mother did not testify, K.W. testified about reporting defendant's sexual abuse when her mother reappeared in her life. Furthermore, there is no evidence that the court consulted an outside source regarding tattoos. Rather, the court

formed an opinion from evidence in the record that defendant's tattooing the word "Love" on his daughter K.W. was consistent with an improper sexual relationship.

{¶ 66} Accordingly, defendant did not show that the court considered outside influences in reaching its guilty verdict, and his third assignment of error is overruled.

{¶ 67} In defendant's fourth and final assignment of error, he argues as follows:

{¶ 68} "IV.   The trial court's sentence was excessive and contrary to law."

{¶ 69} Specifically, defendant argues that the court erred in sentencing him to consecutive terms in prison for his 12 rape convictions, because it failed to make the statutory findings pursuant to R.C. 2929.14 and 2929.19.

{¶ 70} In *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶39, the Ohio Supreme Court concluded that "trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences * * *."   We review felony sentencing under "a two-step process that first requires us to determine if the sentence is clearly and convincingly contrary to law and if not, whether the trial court abused its discretion by imposing it."   *State v. Fletcher*, Cuyahoga App. No. 94807, 2011-Ohio-474, ¶ 7, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 71} Defendant was convicted of 12 counts of rape in violation of R.C. 2907.02(A)(2), which are first degree felonies punishable by three to ten years in prison. R.C. 2929.14(A)(1).   The court sentenced defendant to the minimum term of three years in

prison for each count; therefore, defendant's sentence is not contrary to law. The court then ran the 12 three-year sentences consecutively. Although the court is not required to make findings on the record, R.C. 2929.14(E)(4) serves as guidance when imposing consecutive sentences. Factors to consider include protecting the public, punishing the offender, the seriousness of the offender's conduct, the offender's criminal history, whether the offenses were committed as a course of conduct, and the harm caused to the victim.

**{¶ 72}** The court noted that defendant "does not have a long or particularly significant criminal history, although he has previously served a prison term short, though, it was." The court considered defendant's presentence investigation report, including psychological evaluations, and determined that consecutive minimum sentences were necessary to punish defendant for the seriousness of his continuous offenses, which caused "serious physical and psychological harm" to his daughter. The court also found that defendant's "relationship with the victim facilitated the offense."

**{¶ 73}** After reviewing the record, we cannot say that the court abused its discretion in sentencing defendant to 36 years in prison and his final assignment of error is overruled.

**{¶ 74}** Defendant's convictions are affirmed and this case is remanded for resentencing consistent with the merger of allied offenses of similar import.

It is ordered that appellee and appellant split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED CONCURRING AND DISSENTING OPINION)


EILEEN A. GALLAGHER, J., DISSENTING IN PART AND CONCURRING IN PART:

{¶ 75} For the following reasons, I respectfully dissent in part from the majority opinion in regards to appellant's convictions under Count 7 (rape) and Count 25 (importuning) because I find that insufficient evidence was presented at trial to support convictions under these counts.

{¶ 76} As indicted, Count 7 charged appellant with rape in violation of R.C. 2907.02(A)(2) and alleged that on or about October 1, 2007 to October 31,

2007, appellant unlawfully engaged in sexual conduct with K.W. by purposefully compelling her to submit by force or threat of force.

**{¶ 77}** R.C. 2907.02(A)(2) provides that "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01 defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶ 78}** In *State v. Ferguson* (1983), 5 Ohio St.3d 160, 450 N.E.2d 265, the Ohio Supreme Court addressed what constitutes sufficient evidence of "sexual conduct" to support a rape charge and stated that: "[I]n a rape prosecution where the state's evidence is essentially the testimony of the victim, and where the victim testifies that she and the accused only had 'intercourse' and does not testify as to any degree of vaginal or anal penetration, convictions on charges relating to either vaginal or anal intercourse are based on insufficient evidence." Id. at 168. "[I]n order to sustain a conviction on rape charges predicated on either vaginal or anal intercourse, the state is required to

establish beyond a reasonable doubt that the accused and the victim actually engaged in vaginal or anal intercourse." Id. at 167.

{¶ 79} The court further stated that, "in recognition of the state's burden of proof in criminal cases, we will not draw inferences against the accused from what must be characterized as vague and ambiguous testimony." Id. at 168. "[A]s unpleasant an ordeal as it might be, we must reinforce the need to have the events described with sufficient clarity to establish the offender's guilt beyond a reasonable doubt. To this end, the prosecutor must be aware of the elements necessary to prove the state's case and to elicit testimony as to those elements as tactfully as possible." Id. at fn.6.

{¶ 80} In the case sub judice, the only evidence presented at trial in regards to the rape charged in count 7 consisted of the testimony of the victim who stated that the incident occurred near Halloween and that appellant asked her to lay down on the bed. (Tr. 55.) K.W. testified that appellant then "hurried up and inserted his penis in." (Tr. 56.) No further testimony or details regarding this particular incident were elicited.

{¶ 81} Under the authority of *Ferguson*, I would hold that the testimony of the victim in the present case solely in regards to Count 7 is insufficient as a matter of law to sustain a conviction for rape in violation of R.C. 2907.02(A)(2). See, also, *State v. Paskins* (1979), Fairfield App. No.

40-CA-78, (holding that victim's testimony that defendant, "took his thing out" and "put it in my bottom" was insufficient as a matter of law to show penetration to support a conviction of rape.) *State v. Miller* (1995), Defiance App. No. 4-93-24, (holding that pursuant to *Ferguson*, victim's statement that "he raped me," by itself, was insufficient as a matter of law to infer that vaginal intercourse occurred.)

**{¶ 82}** Count 25 charged appellant with importuning in violation of R.C. 2907.07(B) and alleged that on or about September 11, 2008 to September 30, 2008, appellant unlawfully solicited K.W. to engage in sexual conduct.

**{¶ 83}** The term "solicit" is defined as "to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." Ohio Jury Instructions, Section 523.03; *State v. Moore*, Cuyahoga App. No. 83692, 2004-Ohio-5732.

**{¶ 84}** K.W. testified at trial that in the fall of 2008 appellant took her to a car repair shop where appellant worked. K.W. and appellant were talking inside the shop when appellant produced a cover or blanket, laid the cover out on the floor, and called K.W. into the room. Beyond asking K.W. to come into the room, appellant did not speak. K.W. told appellant that she was on her period and, at that time, they left the shop.

{¶ 85} I find these limited facts to be insufficient as a matter of law to establish the element of solicitation to sustain a conviction for importuning in violation of R.C. 2907.07(B).

{¶ 86} Because I find the evidence presented at trial insufficient to support appellant's convictions for rape under Count 7 and importuning under Count 25, I would vacate appellant's conviction and sentence as to those two counts and remand the matter for proceedings consistent with this dissent.