[Cite as *State v. Jones*, 2019-Ohio-1526.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                  No. 107338

    v.                           :

RONALD D. JONES,                        :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-17-616595-A and CR-17-617724-A

---

### *Appearances:*

Mary Catherine Corrigan, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney, and Aqueelah
A. Jordan, Assistant Prosecuting Attorney, *for appellee.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Ronald Jones, appeals his convictions and sentence. He raises two assignments of error for our review:

> 1. The trial court erred by finding that the count(s) of [Cuyahoga C.P. No. CR-17-617724] did not merge for the purposes of sentencing.

2. The trial court erred by sentencing the appellant to consecutive sentences.

{¶ 2} Finding no merit to his arguments, we affirm.

## I. Procedural History and Factual Background

{¶ 3} The charges in this case arose after Jones sexually abused his granddaughter over a two-year period — more than 20 years after he did the same thing to his daughter (the victim's mother). Jones went to prison for felonious sexual penetration in 1994 for sexually abusing his daughter. He was sentenced to 6 to 25 years in prison. He was released in 2006 and classified as a sexual predator under Megan's Law. Under Megan's Law, a sexual-predator classification was the most severe designation, requiring Jones to register every 90 days for the rest of his life.

{¶ 4} According to the police report in Cuyahoga C.P. No. CR-17-617724-A, the sheriff received an anonymous tip in 2017 that Jones was not living at his registered address, which was a boarding house. The tipster informed the sheriff that Jones had been residing with his wife (the victim's grandmother) for the past two years. The sex offender verification unit attempted to verify Jones's address at the boarding house on four separate occasions; each attempt resulted in no response from Jones. Further, a resident of the boarding house told sheriff deputies that he did not know Jones.

{¶ 5} In April 2017, Jones was indicted in Cuyahoga C.P. No. CR-17-616595-A on three counts, including one count of failure to provide notice of change

of address in violation of R.C. 2950.05(E)(1), a third-degree felony, and two counts of failure to register in violation of R.C. 2950.04(E), first-degree felonies. Each count included a furthermore specification that Jones had previously been convicted of attempted verification of current address in violation of R.C. 2923.02 and 2950.06.

{¶ 6} In July 2017, Jones was indicted in No. CR-17-617724-A on five counts, including one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; two counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree; and two counts of kidnapping in violation of R.C. 2905.01(A)(4), felonies of the first degree. Each count contained sexually violent predator specifications, and the kidnapping counts also contained sexual-motivation specifications. The indictment alleged that the underlying events occurred between March 1, 2015 and March 10, 2017.

{¶ 7} The police report in CR-17-617724-A stated that police responded to a call regarding a sexual assault victim at Rainbow Babies and Children's Hospital. The victim was 14 years old at the time. She told police that her grandfather had been sexually assaulting her for two years, beginning when she was 12 years old. The victim explained to police that she would stay at her grandparents' house when her mother worked on weekends. When the victim's grandmother left for work, Jones would wake up the victim, make her take her clothes off, and make her lie on her back on the bed. The victim stated that Jones would "put his penis inside of her vagina" and it would "move up and down." Jones would ejaculate inside the victim

and tell her to "clean herself up" and not to "tell anybody about this." The victim told police that she was last raped in the middle of March 2017. She said that the abuse happened more than ten times.

{¶ 8} The victim's mother told police that as soon as her daughter told her about the abuse, she believed her daughter because Jones did similar things to her when she was growing up, which resulted in him going to prison.

{¶ 9} Jones entered into a plea in both cases. In CR-17-616595-A, Jones pleaded guilty to an amended indictment of one count of failure to provide notice of change of address. In CR-17-617724-A, Jones pleaded guilty to an amended indictment of one count of sexual battery in violation of R.C. 2907.03(A)(1), a felony of the third degree, and one count of attempted rape in violation of R.C. 2907.02(A)(2) and 2923.02, a felony of the second degree. The remaining counts in both cases were nolled.

{¶ 10} In May 2018, the trial court sentenced Jones to 36 months in prison for failure to provide notice of change of address. It ordered that this sentence be served concurrent to the one imposed for CR-17-617724-A. The trial court also notified Jones that he would be subject to three years of discretionary postrelease control upon his release from prison and imposed costs, ordering that Jones perform community work service in prison, if offered, in lieu of paying costs.

{¶ 11} In CR-17-617724-A, the trial court sentenced Jones to 8 years in prison for attempted rape and 5 years for sexual battery, to be served consecutive to each other but concurrent to the 36 months imposed for CR-17-616595-A, for an

aggregate sentence of 13 years in prison. The trial court notified Jones that he would be subject to a mandatory period of five years of postrelease control upon his release from prison and that he was classified as a Tier III sex offender. The trial court also imposed costs. It is from these judgments that Jones now appeals.

## II. Allied Offenses

{¶ 12} In his first assignment of error, Jones maintains that the trial court should have merged his attempted rape and sexual battery convictions. We disagree.

{¶ 13} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7. But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 14} In Ohio, this constitutional protection is codified in R.C. 2941.25, which codifies the judicial merger doctrine. *State v. Cabrales*, 118 Ohio St.3d 54,

2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 344 N.E.2d 133 (1976).

{¶ 15} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 16} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph two of the syllabus.

{¶ 17} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. If a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: (1) the conduct constitutes

offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 18} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 19} At the sentencing hearing, the trial court inquired about merger. The state explained that the charges did not merge because the indictment was charged as the first incident in March 2015 and the last incident in March 2017 (the indictment alleged that the date of the offenses was "on or about March 1, 2015 to March 10, 2017"). The two counts that Jones pleaded guilty to represented the first and last incidents.

{¶ 20} Defense counsel argued that the two offenses were allied offenses because although the indictment delineated the incidents as "a first incident and last incident," the state presented them "throughout the entire case as a continuing course of conduct." Defense counsel further argued that because there were no specific dates alleged, and the dates and the victim were the same for both charges, the counts should merge. Defense counsel maintained that the state "created dates" because the victim did not know exactly when the abuse began or when it ended. Upon questioning from the trial court, defense counsel agreed that by "course of conduct" she meant "one event."

{¶ 21} The trial court agreed with the state that the offenses were not allied offenses of similar import and denied Jones's request to merge the offenses.

{¶ 22} Jones raises the same argument here — that because the indictment did not allege specific dates, "both offenses were comprised of the same conduct and same state of mind." He contends that the dates as alleged in the indictment "presume a single act." In support of this argument, Jones cites to *State v. Welch*, 8th Dist. Cuyahoga No. 95577, 2011-Ohio-3243. He claims that "pursuant to the logic of *Welch*," the offenses should have merged. We disagree.

{¶ 23} In *Welch*, the defendant was charged with 67 counts of sexually related offenses after his daughter alleged that he had sexually abused her over a two-year period. The indictment alleged that the offenses occurred between September 2007 and July 2009. After a bench trial, the defendant was convicted of 12 counts of rape, 12 counts of kidnapping, and 13 counts of sexual battery (as well as other charges not relevant to this appeal). The trial court merged the rape and kidnapping offenses for purposes of sentencing. On appeal, the defendant argued that the trial court should have also merged the rape and sexual battery charges.

{¶ 24} This court agreed with *Welch* that the trial court should have merged his rape and sexual battery charges with respect to each of the 12 incidents. We explained, "Twelve of defendant's convictions for both offenses were based on the same conduct and state of mind, albeit in respect to 12 incidents." *Id.* at ¶ 58. Thus, 12 counts of sexual battery merged into 12 counts of rape because each incident of rape and each incident of sexual battery were based on the same conduct. If each

count of rape had been based upon a separate incident from each count of sexual battery, then the offenses would not have merged.

{¶ 25} Focusing on Jones's conduct, the facts in this case are analogous to the latter rather than the former; that is, in this case, Jones's sexual battery and attempted rape convictions resulted from separate conduct. Stated another way, Jones's sexual battery conviction and attempted rape conviction resulted from two separate incidents occurring on separate dates: one in 2015 and one in 2017. Thus, the offenses were committed separately, and the trial court did not err when it refused to merge them.

{¶ 26} Moreover, Jones's argument that his sexual battery conviction and attempted rape conviction were allied offenses based upon the indictment alleging that the dates of both offenses were from March 1, 2015 to March 10, 2017, is without merit. Under Ohio law, "an indictment for repeated sexual contact does not need to specify the exact dates of each contact where the state does not possess or cannot reasonably obtain such information." *State v. Stansell*, 8th Dist. Cuyahoga No. 75889, 2000 Ohio App. LEXIS 1726, 11 (Apr. 20, 2000), quoting *State v. Ambrosia*, 67 Ohio App.3d 552, 587 N.E.2d 892 (6th Dist.1990). Here, the victim told police that she could not remember the exact dates of the abuse, but she remembered it had been going on for two years. The victim remembered the last rape had occurred around the middle of March 2017. Thus, the indictment sufficiently alleged that the acts allegedly began two years prior to that.

{¶ 27} Further, the record amply demonstrates that Jones's convictions resulted from multiple occasions of sexual misconduct — not a single "course of conduct" as Jones argues. In fact, we find that Jones's argument borders on absurd. The legislature most certainly did not intend for Jones's separate rapes — multiple incidents of raping his 12- to 14-year-old granddaughter over a two-year period — to merge.

{¶ 28} Jones's first assignment of error is overruled.

## III. Consecutive Sentences

{¶ 29} In his second assignment of error, Jones concedes that the trial court made the required findings to impose consecutive sentences under R.C. 2929.14(C)(4), but he argues that the court "did nothing more than make the minimal required findings." Jones further argues that the record does not support the trial court's consecutive sentence findings.

{¶ 30} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. Cuyahoga No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892. R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, citing R.C. 2953.08(G)(2). Instead, an appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing

court's findings under [R.C. 2929.14(C)(4)]" or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

{¶ 31} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;
>
> (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or
>
> (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 32} A trial court is not only required to make the statutory findings for consecutive sentences at the sentencing hearing, but it is also required to incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶ 33} According to the presentence investigation report, Jones had a lengthy criminal history, beginning when he was still a juvenile in 1975. Jones was

adjudicated delinquent for aggravated burglary in July 1975 and aggravated robbery in November 1975. He was also adjudicated delinquent of criminal damaging and shoplifting in 1975. As an adult, in addition to felonious sexual penetration in 1994, Jones was convicted of grand theft in 1985, robbery in 1986, disorderly conduct in 1993, unarmed bank robbery 1994, and failure to provide notice of change of address in 2012.

{¶ 34} The state informed the trial court at the sentencing hearing of the facts of the two cases. The state then outlined what Jones had been doing from the county jail since he had been arrested. Essentially, Jones had been calling his wife from jail, attempting to manipulate her, his daughter, and his granddaughter to coerce them to not testify against him. Even after he entered into the plea, he still tried to get his wife to talk to his daughter and granddaughter to try to get them to not come to the sentencing hearing or make a statement to the court regarding sentencing. The state opined that these calls show that Jones was "still trying to exercise his power of control over this family" and "manipulate this system so that he does not have to accept responsibility of his actions."

{¶ 35} Defense counsel explained that Jones was "remorseful," "sad," and "shameful." Jones apologized to the victim and his family. He said that he was "truly sorry about this," and he prayed that they could "put this behind" them. Jones then apologized to the court and asked the judge to place him on probation to give him an opportunity "to right some wrongs in my life."

{¶ 36} The victim wrote a letter to the court for purposes of sentencing. In the letter, the victim explained that she was "heartbroken" because she really loved her grandfather. She stated that she still loved him, but that she would never forget what he did to her. The victim said that she "dreams about this sometimes" and cries at night when she thinks about it. She said that she was "damaged" by her grandfather. She wanted her grandfather to go to jail, "not too long, but just enough so he understands how bad he made me feel and that he hurt me."

{¶ 37} The trial court informed Jones that in "crafting a sentence," it had to consider the seriousness of the crime and mitigating factors. The court stated that "one of those factors" was the fact that Jones was the grandfather of the victim, who was only 12 years old when the sexual abuse began. The court further explained that it also had to consider recidivism factors to determine whether Jones was likely to reoffend in the future. The court stated that Jones had "a reasonably long record," involving violent and sexual crimes. The court further indicated that it was especially concerned about Jones "reoffending specifically with regard to sexual crimes."

{¶ 38} The court told Jones that, in its view, Jones had already had a "second chance," and he violated that chance. The court stated that even if Jones had a "clean record," it would still send him to prison based on the seriousness of Jones's conduct.

{¶ 39} The court imposed its sentence and made the required consecutive sentence findings on the record. The court stated:

[C]onsecutive sentences are necessary to protect the public from future crime or to protect the offender of the consequence of the consecutive sentences to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public if I make one of the following three findings, and one of them is based on the criminal history.

And I think, Mr. Jones, your criminal history indicates and demonstrates to me that consecutive sentences are necessary to protect the public from future crime by you. Stated simply, given the second sexual event, both serious, it should be consecutive. And the time period involved here and the frequency as the facts support indicate a continuing course of conduct which, as acknowledged by the defense, is an ongoing issue. And I think that satisfies one of the other elements that indicate that consecutive sentences are appropriate under this circumstance as well. I only need one, and I think there are two.

{¶ 40} After review, we conclude the trial court's findings were sufficient. The trial court is not required to explain its reasons for imposing consecutive sentences beyond making the findings. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 14. And based upon the facts in the record that we have already discussed, we further find that the record wholly supports the trial court's consecutive sentence findings.

{¶ 41} Jones's second assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
KATHLEEN ANN KEOUGH, J., CONCUR